UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE AMALGAMATED SUGAR COMPANY LLC<br><br>             Plaintiff,<br><br>     v.<br><br>AGRI-SYSTEMS d/b/a ASI INDUSTRIAL,<br><br>             Defendant. | Case No. 1:20-cv-587-MDH |

## ORDER

Before the Court is Defendant's Motion to Dismiss for Improper Venue (Doc. 4). Defendant Agri-Systems d/b/a ASI Industrial ("ASI") requests that this Court dismiss the Complaint on the grounds that parties' contract requires all disputes to be arbitrated and all issues of arbitrability to be determined by the arbitrator. Plaintiff The Amalgamated Sugar Company LLC ("Amalgamated") opposes the Motion. For the reasons set for herein the Motion is **GRANTED**.

## BACKGROUND

This matter arises from a construction contract between The Amalgamated Sugar Company LLC ("Amalgamated"), as Owner, and ASI, as Contractor, on or about April 26, 2018. The form of agreement between ASI and Amalgamated was a Master Construction Contract ("the Contract"), prepared by Amalgamated, which called for ASI to construct sugar storage and

conveyance improvements for Amalgamated's Paul, Idaho facility. The Contract dictated a dispute resolution procedure in Section 12, which provided, in relevant part (emphasis added):

> **12.1** The parties' respective rights and obligations relating to this Agreement shall be determined and enforced in accordance with and shall be governed by the laws of the State in which the Project is located.
> **12.2** Any claim arising out of or related to this Agreement in which the disputed amount is less than one million dollars shall be resolved by a single arbitrator <u>in accordance with the then effective rules of the American Arbitration Association ("AAA").</u> Judgment upon the award rendered pursuant to such arbitration may be entered in any court having jurisdiction thereof. Any arbitration proceeding shall be conducted in the State in which the Project is located unless the parties mutually agree upon another locale. Either party may demand mediation whenever appropriate through AAA or any other mediation process or mediator as the parties may agree upon.
> **12.3** The parties' obligation to resolve disputes by arbitration pursuant to the foregoing provision shall not be a bar or impediment to either party asserting and prosecuting a claim against the other for contribution and common law and contractual indemnity in any lawsuit filed or maintained by a third party.
> **12.4** If any arbitration proceeding or lawsuit is commenced or brought to enforce or interpret any of the rights and obligations set forth herein, the prevailing party in such proceeding or lawsuit, and in any appeal therefrom, shall be entitled to recover its reasonable attorney fees, including those of in-house counsel, as fixed by the arbitrator or court hearing the same.

On April 15, 2020, pursuant to the Contract, ASI submitted a Demand for Arbitration to the American Arbitration Association (AAA), requesting an award in the principal amount of $954,876.17, and served a copy on Amalgamated. On May 28, 2020, Amalgamated submitted, to the AAA, its Answer and Counterclaim, in which it sought damages for alleged breaches of contract and warranty in the minimum amount of $754,941.06.

Pursuant to the AAA's Construction Industry Rules, the parties selected an arbitrator, who then conducted a Case Management Conference on June 24, 2020. Following that Case Management Conference, the appointed arbitrator, John C. Black, issued an Order establishing hearing dates, setting deadlines for the exchange of detailed statements of claims and damages and providing for limited discovery procedures. The arbitration was scheduled for a hearing beginning

on May 10, 2021 and continuing through May 14, 2021.

In compliance with this Case Management Order, the parties exchanged Detailed Statements of their claims on August 14, 2020. While the amount of ASI's claims did not change, Amalgamated substantially increased the amount of its claims to a total of $1,350,560.30. Amalgamated did not, in its Detailed Statement or in any other filing prior to the filing of the Complaint herein, assert any objection to the arbitrability of the claims between the parties after it increased its claim.

The parties continued to participate in the arbitration process for several months thereafter, without Amalgamated raising any objection to the arbitrability of any of the claims. ASI and Amalgamated engaged in discovery in the arbitration proceeding, exchanging a large volume of electronically stored information and negotiating a protective order regarding same. Amalgamated obtained an Order compelling the production of documents from ASI and requesting a continuance of certain pre-arbitration deadlines including the disclosure of expert witnesses.

On December 23, 2020, Amalgamated filed the instant action, seeking the same damages it had sought under its Counterclaim in the arbitration proceeding and asking this Court for an adjudication that its claims are not subject to the arbitration clause contained in the parties' contract. On December 29, 2020, after filing this action, Amalgamated sought a conference from the arbitrator seeking, in part, an Order requiring the production of documents from ASI, which had been withheld pending the finalization of terms of an agreed upon Protective Order.

On January 25, 2021, almost eight months after filing its Counterclaim in the arbitration proceeding, Amalgamated requested that the Arbitrator consent to its withdrawal of its Counterclaim without prejudice to re-filing same should this Court reject its assertion that the claims are not subject to the arbitration agreement.

**STANDARD**

Federal Rule of Civil Procedure 12(b)(3) provides that an action may be dismissed if it is brought in an improper venue. In the context of a Rule 12(b)(3) motion to dismiss, while the pleadings need not be accepted as true on their own, all uncontroverted allegations in the plaintiff's complaint must be accepted as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *See Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

**DISCUSSION**

ASI requests that this Court dismiss the Complaint with prejudice as: (1) the parties have agreed to arbitrate their disputes; (2) to the extent that a question exists as to arbitrability of the claims asserted by Amalgamated, the parties have agreed to submit that question to the arbitrator for determination, which is supported by Ninth Circuit precedent; and (3) by significantly participating in the arbitration process, Amalgamated has waived any objection which it may have to arbitrability of the claims asserted herein.

Amalgamated has waived any objection to arbitration. As articulated in *In re: Snake River Dairymen's Ass'n,* No. 03-41124 2004 WL 4960361 (Bankr. Idaho 2004):

> The Ninth Circuit has explained that "an agreement to arbitrate an issue need not be express; ... it may be implied from the conduct of the parties." *Nghiem v. NEC Elec., Inc.,* 25 F.3d 1437, 1440 (9th Cir.1994) (citing *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1356 (9th Cir.1983)). In both *Nghiem* and *Daniel,* the Ninth Circuit endorsed the notion that a party, not bound by a contractual obligation to arbitrate but who voluntarily participates in the arbitration process to a significant degree, waives its right to argue the arbitrator lacks authority. "It would be unreasonable and unjust to allow [a party] to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months, shortly before the arbitrator announced [a] decision." *Daniel,* 724 F.2d at 1357. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at

hand is the construction of the contract language itself or an allegation of *waiver, delay, or a like defense to arbitrability.*" *Ngheim,* 25 F.3d at 1140 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54 (1985)) (emphasis added).

In this matter, the record shows that Amalgamated continued to use the arbitration process after it had increased its counterclaim amount to above $1,000,000 without raising any objection to the arbitrability of its claim. Amalgamated implies that it currently participates in the arbitration process only defensively against ASI's claim. (Doc. 7, 9). However, the record suggests otherwise. On August 24, 2020, Amalgamated confirmed to the AAA that it was increasing its claim to $1,350,560.30. On August 31, 2020, Amalgamated paid the increase in the filing fee so that its counterclaim, in the larger amount, could be filed. Amalgamated continued to seek discovery in the arbitration proceeding, including going to the step of requesting that the arbitrator compel production of documents from ASI. Amalgamated has now filed a witness list in the arbitration proceeding in which it identifies witnesses who are expected to testify as to Amalgamated's claims against ASI. Amalgamated waited approximately four months after filing its increased counterclaim before it filed in instant action or attempted to withdraw the claim from the arbitration proceeding. Throughout these months, Amalgamated took full advantage of the arbitration process and never raised an objection.

Because the Court finds that Amalgamated waived any objection to the arbitrability of its claims, the Court need not address the issues of contract interpretation in this case. Accordingly, Amalgamated's Complaint is dismissed with prejudice and Amalgamated is **ORDERED** to continue to pursue its claim through the arbitration process.

**IT IS SO ORDERED.**

Dated: March 22, 2021  /s/ Douglas Harpool
**DOUGLAS HARPOOL**
**United States District Judge**